# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|

| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. |
|---|---|

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| V.R. Vallery | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**  IN CHAMBERS - COURT ORDER

On May 24, 2017, the Court granted the Ex Parte Application for Temporary Restraining Order filed by plaintiff Webspectator Corp. ("Plaintiff").  In issuing the Temporary Restraining Order ("TRO"), the Court concluded that Plaintiff had met its burden for the issuance of the TRO without notice to defendants André Tomas Da Silva Pereira Nascimento Parreira ("Parreira"), Dulce Catarina Pareira ("Dulce"), Rafael Mora Funes ("Mora"), and Webspectator Lda (collectively "Defendants").  The Court ordered Plaintiff to serve Defendants with the TRO, the Summons, Complaint, and supporting documentation, and set a briefing schedule allowing the parties to show cause why the Court should not issue a preliminary injunction consistent with the TRO.  Parreira and Dulce have been served with the TRO and filed an Opposition to the issuance of a preliminary injunction.  Plaintiff has filed a Reply in support of its requested preliminary injunction (Docket No. 28).  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for June 8, 2017, is vacated, and the matter taken off calendar.

## I.      Factual and Procedural Background

Plaintiff commenced this action on May 24, 2017, and filed its Ex Parte Application for TRO at the same time.  According to the Complaint and the evidence filed both in support of and in opposition to the TRO and issuance of a preliminary injunction, Parreira, Dulce, and Mora were, until April 18, 2017, directors of Plaintiff.  On April 18, 2017, the Delaware Chancery Court entered an order confirming that Parreira, Dulce, and Mora had resigned their positions with Plaintiff and ordering that they "cease to be, or hold themselves out as, directors" of Plaintiff.  Plaintiff contends that despite no longer being affiliated with Plaintiff, Parreira, Dulce, and Mora have orchestrated a scheme, begun while they were directors of Plaintiff, and despite a "status quo order" entered by the Delaware Chancery Court on September 29, 2016, to divert resources and assets from Plaintiff to themselves and defendant Webspectator Lda, a Portuguese company they control.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

Plaintiff was organized to conduct a digital advertising business using technology developed by Internet Business Technologies, SA, a holding company for a family of related entities including IBT Portugal, IBT Brazil, and IBT USA (collectively "IBT"). IBT applied to the United States Patent and Trademark Office for a trademark for "Webspectator" in December 2011, organized Plaintiff in March 2012, granted to Plaintiff a license to use IBT's technology, and, in 2013, assigned the interest and goodwill in the Webspectator mark to Plaintiff. Plaintiff obtained a registration for the Webspectator mark in February 2014. IBT similarly registered the webspectator.com domain in December 2011. Parreira, who was an IBT employee at the time, was listed as the "admin" and "tech" contact on the webspectator.com domain registration. Plaintiff alleges that the domain registration changed in August 2013, with Parreira listed as the registrant and IBT as the registrant organization. By November 8, 2015, Plaintiff had replaced IBT as the registrant organization. The registration listed Plaintiff's Santa Monica address.

At some point between August 24, 2016, and January 28, 2017, the domain registration was changed and instead of listing Plaintiff's address and contact information, the registration listed Parreira's mobile phone number, an address in Portugal, and an email address of andretparreira@gmail.com. References to Plaintiff as the registrant organization were deleted. In his Declaration in Opposition to the Preliminary Injunction, Parreira states that he, "on behalf of IBT, registered the www.webspectator.com domain name. I always intended to own the www.webspectator.com domain name in my individual capacity." Parreira also claims to have paid for all fees and costs associated with the domain name with his personal funds and that he has never attempted to sell the domain name to Plaintiff or anyone else. In support of its Reply, Plaintiff has provided receipts showing that the domain name registration was purchased by Parreira with a Visa card associated with IBT.

Plaintiff provides its digital advertising tools to Fortune 500 companies and publishers that allow its clients to increase their revenues from internet advertisements by verifying in realtime that those advertisements are being viewed by the targeted consumers. According to Plaintiff, Defendants have removed or blocked Plaintiff's access to its own financial records and prevented Plaintiff from accessing its systems that are hosted on servers operated by Amazon Web Services. Plaintiff also asserts that Defendants have redirected payments Plaintiff should be receiving from third-party marketplaces, including OpenX, SOVRN, Rubicon, and Komoona, to themselves. This diversion of payments has reduced Plaintiff's revenue stream and harmed its relationships with its clients. Plaintiff has also submitted evidence showing that individuals affiliated with Defendants have contacted Plaintiff's clients within the last month as part of an effort to divert revenue from Plaintiff to entities affiliated with Defendants. According to Plaintiff, these diversions could only be accomplished by someone with access to Plaintiff's "back office" systems. Plaintiff's logs of those who have accessed its back office systems appear to show that credentials of individuals affiliated with Defendants accessed Plaintiff's

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

systems 38 times between April 18, 2017, and May 18, 2017. Plaintiff states that these individuals did not have authorization to access its systems at that time.

Plaintiff's Complaint asserts claims for cybersquatting pursuant to the Anti-Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The TRO issued by the Court enjoined Defendants from, among other things, using the Webspectator mark, use of or access to the mark, the www.webspectator.com domain name, taking actions to directly or indirectly divert payments from Plaintiff or its clients, from withholding user names and passwords necessary for Plaintiff to access its back office systems, withholding access to the domain name, withholding money or payments generated with Plaintiff's technology, trademark, or domain name that were diverted or received by Defendants, and from interfering with the release of funds collected or generated by SOVRN, OpenX, Rubicon, Komoona, or any other similar marketplace prior to April 18, 2017.

## II.     Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions as part of this four-element test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this "sliding scale," a preliminary injunction may issue "when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," as long as the other two Winter factors have also been met. Id. (internal citations omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997). A preliminary injunction "is not a preliminary adjudication on the ultimate merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1423 (9th Cir. 1984). "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).

By requiring Defendants to take affirmative steps to allow Plaintiff to obtain access to its systems and accounts, the injunction Plaintiff seeks in some ways goes beyond preserving the status quo and could be considered to include provisions that require a mandatory injunction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

instead of a prohibitory injunction. Mandatory injunctions such as this are particularly disfavored. See Stanley v. University of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994) ("A prohibitory injunction preserves the status quo. A mandatory injunction 'goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored.' When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'") (citations omitted) (quoting Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1979)); Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984) ("In cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction."); Anderson, 612 F.2d at 1115 ("'[M]andatory injunctions, however, are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'") (quoting Clune v. Publishers' Assn., 214 F. Supp. 520 (S.D.N.Y. 1963)).

### III. Analysis

#### A. Success on the Merits

The ACPA authorizes a civil action by the owner of a mark against a person who:

 (I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

 (ii) registers, traffics in, or uses a domain name that–

  (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]

  (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

15 U.S.C. § 1125(d)(1)(A). "A finding of 'bad faith' is an essential prerequisite to finding an ACPA violation." Interstellar Starship Svcs., Ltd. v. Epix, Inc., 304 F.3d 936, 946 (9th Cir. 2002). In determining whether a person has a "bad faith intent" for purposes of the Lanham Act's cyberpiracy provisions, a court may consider factors including, but not limited to:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

                    names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

    (IX)    the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). "Bad faith intent" does not include situations "in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." Id., § 1125(d)(1)(b)(ii).

    The CFAA allows anyone "who suffers damage or loss by reason of a violation of [the CFAA] to maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The CFAA imposes liability on whoever:

    (2)    intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
            . . .
    (C)    information from any protected computer;
            . . .
    (4)    knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $ 5,000 in any 1–year period;

    (5)    (A)    knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

        (B)      intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

        (C)      intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a).

     At least at this preliminary stage, the Court concludes that Plaintiff has established a likelihood of success on the merits on both of its claims. Specifically, Plaintiff, and not Defendants, is the owner of the Webspectator mark. To the extent Parreira was involved in the registration and maintenance of the www.webspectator.com domain name, he appears to have done so within the scope of his employment at IBT and Plaintiff. Additionally, Parreira's attempt to transfer the registration of the domain name appears to have occurred as a result of, or at least in anticipation of, the dispute concerning the management and control of Plaintiff. These apparent machinations, along with Defendants' registration of a confusingly similar webspectator domain in Portugal, and the efforts by Defendants to "divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark . . . for commercial gain" are sufficient to support a finding that Defendants have the "bad faith" necessary to support liability under the ACPA. 15 U.S.C. § 1125(d)(1)(B)(i)(V). The Court similarly concludes that Plaintiff has established that it is likely to prevail on the merits of its CFAA claim because Defendants and those acting in concert with them appear to have accessed Plaintiff's computer system without authorization and caused damages significantly in excess of $5,000. Moreover, contrary to Defendants' assertions that the injunctive relief Plaintiff seeks exceeds the scope of available relief for the claims alleged in the Complaint, the Court concludes that the requested relief is closely related to the remedies available for the violations of the ACPA and CFAA contained in the Complaint. At a minimum, Plaintiff has raised serious questions going to the merits of its claims.

     B.    **<u>Irreparable Harm</u>**

     Plaintiff asserts that it will suffer irreparable harm if the Court does not grant its requested injunctive relief because Defendants have diverted Plaintiff's clients and revenues in a way that has already harmed Plaintiff's relationships with its clients. Additionally, as a result of Defendants' apparent efforts to interfere with Plaintiff's access to its systems and computer and financial accounts, Plaintiff faces extraordinary difficulties in maintaining its business and fulfilling its obligations to its clients. In contrast to the evidence of immediate and irreparable harm submitted by Plaintiff should the Court not issue a preliminary injunction, Defendants have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

not attempted to show how they might be harmed by the injunction Plaintiff seeks. This factor therefore weighs heavily in favor of the issuance of a preliminary injunction.

### C. **Balance of Hardships**

The balance of hardships, which in this instance involves weighing the minimal harm Defendants might suffer from the issuance of injunctive relief to the existential threat Plaintiff faces should Defendants' conduct continue, tips sharply in favor of issuing the preliminary injunction Plaintiff seeks. Indeed, the balance of hardships tips so sharply in favor of Plaintiff, and it has established such a strong likelihood of success on the merits, that even to the extent Plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, Plaintiff has satisfied its burden to establish that it is entitled to both mandatory and prohibitory injunctive relief.

### D. **Public Interest**

While the public may not have an exceedingly strong interest in this commercial dispute between these parties, it appears that the clients of Plaintiff may suffer if the Court does not grant the preliminary injunction Plaintiff seeks. The Court therefore concludes that the public interest factor weighs in favor of the issuance of injunctive relief.

### Conclusion

For all of the foregoing reasons, the Court concludes that Plaintiff is entitled to a preliminary injunction. Plaintiff must have access to its accounts and computer systems, including those maintained on servers operated by Amazon Web Services, during the pendency of this action. The Court therefore will continue the terms of the TRO during the pendency of this action. Defendants André Tomas Da Silva Pereira Nascimento Parreira, Dulce Catarina Pareira, Rafael Mora Funes ("Mora"), and Webspectator Lda, along with their officers, agents, servants, employees, and other persons who are in active concert or participation with them who receive actual notice of this Order are enjoined:

(a) From using the Webspectator Corporation trademark;
(b) From any use of, or access to, the Webspectator Corporation trademark, trademarked domain name or operating system;
(c) From taking any action that would directly or indirectly block or divert payments to Webspectator Corporation or its publisher clients for ads placed using the Webspectator Corporation technology, www.webspectator.com domain or trademark;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3921 PA (JEMx) | Date | June 7, 2017 |
|---|---|---|---|
| Title | Webspectator Corp. v. André Tomas Da Silva Pereira Nascimento Parreira, et al. | | |

    (d)    From withholding user names and passwords necessary to access and use the www.webspectator.com domain, Webspectator Corporation's back office system, and other accounts, including those maintained on servers operated by Amazon Web Services. Defendants shall, within one week of service of this Order, make all reasonable efforts to provide Plaintiff with such user names and passwords known to them and their officers, agents, servants, employees, and other persons who are in active concert or participation with them;

    (e)    From withholding access and use of www.webspectator.com domain from Plaintiff;

    (f)    From diverting, redirecting, interfering with and/or blocking the payment or transfer of any revenue generated by use of the Webspectator Corporation technology, Web Server, trademark or www.webspectator.com domain to Webspectator Corporation, owned and controlled by Plaintiff;

    (g)    From withholding from Webspectator Corporation any monies or payments generated by use of the Webspectator Corporation technology, Web Server, trademark or www.webspectator.com domain that were diverted, redirected or blocked by Defendants, or were received by Defendants or any entity or account they directly or indirectly own or control;

    (h)    From claiming any interest in funds collected or generated by SOVRN prior to April 18, 2017, that were generated by use of the Webspectator Corporation technology, Web Server, trademark or www.webspectator.com domain; and

    (i)    From in any way interfering with, disrupting or impeding the release of funds collected or generated by SOVRN, OpenX, Rubicon, Komoona, or any other marketplace, prior to April 18, 2017, that were generated by use of the Webspectator Corporation technology, Web Server, trademark or www.webspectator.com domain.

This preliminary injunction is contingent upon Plaintiff maintaining the $100,000.00 in security it posted upon the issuance of the TRO.

    IT IS SO ORDERED.